UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
:
BARBARA KANOFF,                          :    Civil Action No. 03-2363 (FLW)
                                         :
               Plaintiff,                :
                                         :
       v.                                :
                                         :    **OPINION**
BETTER LIFE RENTING CORP. and LEFRAK    :
ORGANIZATIONS, INC.,                     :
                                         :
                                         :
               Defendants.               :
_____:

**WOLFSON, District Judge:**

Before the Court is a motion to dismiss, or in the alternative, to stay and to compel arbitration filed by defendants Better Life Renting Corp. ("Better Life") and Lefrak Organizations, Inc. ("Lefrak")(collectively, "Defendants"). Defendants seek, in this motion, to dismiss and to compel Plaintiff Barbara Kanoff ("Plaintiff") to arbitrate her employment-related discrimination claims under the New Jersey Law Against Discrimination (the "NJLAD") based upon an Arbitration Agreement (the "Agreement"). The Court held oral argument on December 19, 2007, wherein the Court addressed the majority of Plaintiff's arguments in regard to the enforceability of the Agreement. The Court also requested the parties to further brief the question of whether SPD Services Corp. ("SPD"), a signatory to the Agreement, is an affiliate of Better Life within the meaning of the Agreement. After reviewing correspondence from the parties on this issue, the Court is satisfied that the Arbitration Agreement is enforceable, and for the reasons set forth herein, Defendants' motion is **GRANTED** and Plaintiff's claims are **DISMISSED** without prejudice.

## BACKGROUND

As the Court has extensively recounted the facts of this case during oral argument, it will only recount relevant facts here. Plaintiff alleges that she was employed as a rental agent at Harrison Towers, an apartment complex in Somerset, New Jersey, from 1998 to April 2007, by Michael Bass of Better Life. Plaintiff concedes that when she was hired, she knew that the building was owned by defendant Lefrak, a large family-owned entity that erected and rented apartments, primarily in New York and New Jersey, and that Better Life administered Lefrak's apartment rentals in New Jersey. Plaintiff alleges that she dealt solely with Mr. Bass throughout her employment.

In or around May 2004, Plaintiff received a request to sign the subject Arbitration Agreement. The Agreement specifically provides that it covers:

> all Employment Disputes between you and the Company, whether occurring before, on the date of, or after the execution of this Agreement, and includes, but is not limited to, claims or allegations concerning wages or compensation . . . discrimination, harassment or retaliation (including . . . claims or allegations of discrimination on the basis of race, sex, color, national origin, sexual orientation, age, religion, creed, marital status, veteran status) . . . or any alleged violation of any federal, state, or other governmental law, statute or regulation, including . . . the New Jersey Law Against Discrimination . . . .

See the Agreement at 2. The Agreement provides for arbitration of "Employment Disputes," which is defined to include "any claim, controversy or dispute arising out of, or relating to [Plaintiff's] employment, the terms and condition of employment or the termination of that employment." Id. at 1. The term "Company," which is listed as SPD, is defined as Plaintiff's "employer and any of its affiliates, parents, subsidiaries and owners, together with its or their respective past, present of future officers, directors, employees, shareholders, principals, partners, limited liability company members, trustees, spouses, heirs . . . ." Id. Furthermore, the paragraph immediately above Plaintiff's signature states that by signing the Agreement, Plaintiff would agree that "in consideration

for [her] employment and continued employment, [she] agree[s] to all provisions of this Agreement. This includes the requirement that any Employment Dispute should be submitted to final and binding arbitration." See Farrelly Decl., Exhibit C. Plaintiff would also be "waiv[ing] any rights [she] may have to bring a lawsuit against the Company and to a jury trial . . . ." Id. Plaintiff signed the Agreement.

Approximately three years later, Plaintiff was terminated from her job, and she initiated the instant suit alleging that Defendants terminated her employment as a result of age discrimination in contravention of the NJLAD. Pursuant to the Agreement, Defendants move the Court to compel Plaintiff to arbitrate her discrimination claims. In response, Plaintiff offered the Court various contractual arguments why the Agreement should not be enforced. Specifically, Plaintiff argues that the Agreement (1) is not enforceable as a matter of law because there was inadequate consideration in exchange for Plaintiff to sign the Agreement; (2) is not enforceable because it is a contract of adhesion; (3) is not a valid waiver because it does not specifically cover disputes arising out of the NJLAD and does not provide that she waived her right to a jury trial; and (4) is not enforceable because it is not between her and her employer.

On December 19, 2007, the Court held an oral argument with the parties. In that hearing, the Court addressed all of the issues (outlined above) raised by Plaintiff except one, and as to that issue, the Court requested the parties to submit further briefing. Specifically, with regard to Plaintiff's lack of consideration claim, I held that continued employment was sufficient consideration to support an arbitration agreement between Plaintiff and her employer. See Hogan v. Bergen Brunswig Corp., 153 N.J. Super. 37, 43 (App. Div. 1977); Zellner v. Conrad, 183 A.D.2d 250, 256 (N.Y. App. Div. 1992). Next, I found that while the Agreement was arguably a contract of adhesion, pursuant to the

holdings set forth in Martindale v. Sandvik, Inc., 173 N.J. 76, 91-92 (2002) and Gilmer v. Interstate/Johnson Land Corp., 500 U.S. 20, 33 (1991), this fact alone does not invalidate the Agreement. I reasoned that "[m]ere inequality in bargaining power . . . is not a sufficient reason to hold that arbitration agreements are never enforceable in the employment context." Gilmer, 500 U.S. at 33. There must be more egregious conduct from the employer than ordinary economic pressure faced by every employee who needs the job. Young v. Prudential Insurance Company of America, 297 N.J. Super. 605, 621 (App. Div. 1997). Moreover, the employment application was not offered on a take-it-or-leave-it basis. Defendants gave Plaintiff an opportunity to consult with an attorney before signing the Agreement. Nothing in the record indicates that the terms of the Agreement were oppressive or unconscionable. Absent a showing of fraud or oppressive conduct, I found the Agreement enforceable. See Martindale, 173 N.J. at 91-92 (New Jersey courts have held on "numerous occasions that agreements to arbitrate are not violative of public policy . . . [r]ather, the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes"). Finally, I found that language of the Agreement clearly encompassed the employment dispute at issue, namely, age discrimination under the NJLAD.

During oral argument, Plaintiff's counsel vehemently argued that because SPD and Better Life are not affiliates, or related, within the definition of "Company," Plaintiff did not sign an arbitration agreement with her employer, Better Life. Plaintiff argued that the Agreement is only enforceable to the extent that employment disputes were with SPD and its affiliates, and because there is no relationship between Better Life and SPD, the Agreement does not control. The Court instructed the parties to further brief this issue, and requested Defendants to submit proof that SPD

and Better Life are affiliates.[1]  Since the hearing, the Court has received correspondence from both parties.  The Court will now address whether SPD and Better Life are within the definition of the "Company" under the Agreement.

### DISCUSSION

"[A]rbitartion is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." AT&T Tech., Inc. v. Communications Workers of Am., 475 U.S. 643, 648 (1986)(citations omitted); see also Laborers' Int'l Union of N. Am. v. Foster Wheeler Corp., 868 F.2d 573, 576 (3d Cir. 1989)(per curiam).  "The question whether the parties have submitted a particular dispute to arbitration . . . is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 183 (2002)(citations omitted); see also Laborers' Int'l Union of N. Am., 868 F.2d at 576.  When determining whether the parties entered into a valid arbitration agreement, the court "decides only whether there was an agreement to arbitrate, and if so, whether the agreement is valid." Great W. Mortgage Corp. v. Peacock, 110 F.3d 222, 228 (3d Cir. 1996)(citing 9 U.S.C. § 2).  The "court is not to consider the merits of the claims giving rise to the controversy, but is only to determine . . . whether there is a valid agreement to arbitrate." Id.  If the court finds there is an agreement to arbitrate, the disposition of the merits is left to the arbitrator. Id.

The Third Circuit has set forth a two-prong inquiry for courts to use when determining whether to compel arbitration.  Under this two-prong test, the questions posed are:  "(1) Did the

---

[1]During the hearing, Plaintiff sought leave to propound interrogatories on Defendants to establish whether SPD and Better Life are affiliates.  Since the Court is satisfied with the information subsequently provided by Defendants to Plaintiff and the Court, Plaintiff's request is denied.

parties seeking or resisting arbitration enter into a valid arbitration agreement? (2) Does the dispute between those parties fall within the language of the arbitration agreement?" John Hancock Mut. Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998) (citations omitted). Additionally, "when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate had been made between the parties, [the court] should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." Par-Knit Mills v. Stockbridge Fabrics Co., 636 F.2d 51, 54 (3d Cir. 1980). Moreover, the Federal Arbitration Act ("FAA") specifically "permits states to regulate contracts, including contracts containing arbitration agreements under general contract principles; therefore, an arbitration clause may be invalidated 'upon such grounds as exist at law or in equity for the revocation of any contract.'" Leodori v. Cigna Corp., 175 N.J. 293, 301 (2003)(quoting Martindale, 173 N.J. at 85); see Gay v. Creditinform, 511 F.3d 369 (3d. Cir. 2007)(courts are to look to state contract principles when interpreting arbitration agreements).

However, questions of arbitrability "must be addressed with a healthy regard for the federal policy favoring arbitration." Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). If the scope of an arbitration agreement is ambiguous, the FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Id. at 24-25. As the parties have cited to New Jersey substantive contract law, the Court shall apply applicable New Jersey state law principles to evaluate the Agreement.[2]

---

[2] Despite the fact that the Agreement provides that New York 's substantive law should govern the analysis of this matter, both parties, in their submissions, cite to New Jersey law. Nevertheless, the Court finds that New York's contract principals are similar to New Jersey's in the arbitration context. See Fletcher v. Kidder, Peabbody & Co., 619 N.E. 2d 998 (N.Y.), cert. denied, 510 U.S. 993 (1993)(non-signatory, third party beneficiaries are entitled to enforce arbitration agreements); Gillman v. Chase Manhattan Bank, N.A., 534 N.E. 2d 824, 828-829 (N.Y. 1988)(similar to New Jersey, New York courts require both procedural and substantive

To begin, the Court notes that the Agreement defines the "Company" as Plaintiff's "employer and any of its affiliates, parents, subsidiaries and owners, together with its or their respective past, present of future officers, directors, employees, shareholders, principals, partners, limited liability company members, trustees, spouses, heirs . . . ." See the Agreement at 1.  While "a non-signatory cannot be bound to arbitrate unless it is bound 'under traditional principles of contract and agency law' to be akin to a signatory of the underlying agreement," E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S., 269 F.3d 187, 194 (3d Cir. 2001) (citing Bel-Ray Co. v. Chemrite Ltd., 181 F.3d 435, 444 (3d Cir. 1999)), the Third Circuit has recognized that an intended third party beneficiary of an arbitration agreement may be bound by the agreement's terms; "whether seeking to avoid or compel arbitration, a third party beneficiary has been bound by contract terms where its claim arises out of the underlying contract to which it was an intended third party beneficiary." E.I. Dupont, 269 F.3d at 195.  Thus, here, it follows that since SPD is the signatory on the Agreement, Better Life would have to be an intended third-party beneficiary to enforce the contract.  See Parilla v. IAP World Wide Services VI, Inc., 368 F.3d 269, 274-75 (2004).

Plaintiff essentially argues that Better Life is not a third-party beneficiary because it is not an "affiliate" of SPD.  Plaintiff further asserts that, as an affiliate, SPD would have to own Better Life by less than majority of its shares or any other means of control.  She cites to the Chillmark case to support her legal proposition.  The Chillmark court explained that an affiliate is "a corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent or sibling company." Chillmark v. Partners, LLC v. MTS, Inc., No. 02-5339, 2007 WL 1964408, at *3 (N.D. Ill. Apr. 25, 2003).  This accords with the Black Law Dictionary's definition of

---

unconscionability or fairness in interpreting contract of adhesion).

"affiliate." See Black Law's Dictionary 63 (8th ed. 2004)(same definition). While an affiliation between two corporations depends partly on control, having common ownership satisfies such requirement. Indeed, the Court in Cold Stone Creamery, Inc. v. Lenora Foods, LLC, No. 07-0303, 2007 WL 4336064, at *2 (N.D. Fla. Dec. 8, 2007), held that two companies that are owned by the same person are "plainly affiliates." Id. Here, SPD and Better Life have such common ownership. SPD is wholly owned by Richard S. LeFrak. See Lehman Decl. at ¶ 2. Better Life is wholly owned by Mid State Management Corporation, which, in turn, is wholly owned by Richard S. LeFrak. Id. at ¶ 3. Therefore, Mr. LeFrak owns both companies. The Court finds that by the express terms of the Agreement, SPD and Better Life are affiliates by virtue of Mr. LeFrak's ownership.

Moreover, under New Jersey law, "[t]he standard applied by courts in determining third-party beneficiary status is whether the contracting parties intended that a third party should receive a benefit which might be enforced in the courts." Rieder Cmtys. v. N. Brunswick, 227 N.J. Super. 214, 222 (App. Div. 1988) (internal quotations omitted). "[T]he intention of contracting parties to benefit an unnamed third party must be garnered from an examination of the contract and a consideration of the circumstances attendant to its execution." Id. It is clear to the Court that when the parties entered into the Agreement, the intended purpose was to provide for arbitration procedures in the event that Plaintiff brings claims regarding her employment against Better Life. As explained during the hearing, the parties stated SPD is the payroll company associated with Better Life. Plaintiff was paid through a payroll account administered by SPD. See Plaintiff's Cert. at ¶ 4. Plaintiff understood that Better Life and SPD are subsidiaries of Lefrak. See Plaintiff's Comp. at ¶¶ 3, 7; Plaintiff's Cert. at ¶ 2. In addition, Mr. John Farrelly, who signed the Agreement on behalf of SPD, is the head of human resources at both SPD and Better Life. Plaintiff also stated that

during her employment, any communications that she had with regard to payroll (i.e., vacations, etc.) were with SPD; any other employment issues she dealt with Better Life. With that understanding, in May 2004, Plaintiff signed the Agreement which specifically sets forth that any "employment disputes" arising out of her employment shall be referred to arbitration. As a matter of common sense, Plaintiff knew that the Agreement referred to her employment, and in that regard she considered Better Life her direct employer and SPD as administering her payroll. Although Plaintiff argues post hoc that she didn't understand what she was signing or what rights she was relinquishing, Plaintiff failed to take the opportunity then to review the Agreement with an attorney when a reviewing period was provided to her. Similarly, it is reasonable to infer from the broad definition of "Company" in the Agreement that SPD drafted the contract to benefit not only itself, but as well Better Life and other related companies. Thus, based on a review of the circumstances surrounding the execution of the Agreement, and the language of the document, the Court finds that Better Life is an affiliate of SPD within the meaning of the Agreement and it was an intended beneficiary of the contract. See Gilmer, 500 U.S. at 25 (the employer does not need to sign an arbitration agreement for that agreement to be enforceable as to discrimination claims); see also In re Prudential Ins. Co. of America Sales Practive Litig., 133 F.3d 255, 229 (3d Cir.), cert. denied, 525 U.S. 817 (1998).

  Plaintiff further suggests that the Court should not enforce the Agreement because when she signed the Agreement, she did not believe that the contract had any legal effect on her relationship with Better Life. Indeed, Plaintiff's own statements contradict her argument. In her Certification, Plaintiff explained that the reason she signed the Agreement was because the contract was handed to her by her supervisor, Mr. Michael Bass, and that she felt she had to sign the contract or else her job would be jeopardized. See Plaintiff's Cert. at 6. Clearly, Plaintiff felt at that time the Agreement

9

pertained to her employment at Better Life. Nevertheless, the Court need not give weight to Plaintiff's subjective intent, rather, the Court looks to the plain meaning of contract language, and it unambiguously encompasses SPD's affiliate, Better Life, as a part of the Agreement. See Quigley v. KPMG Peat Marwick, LLP, 330 N.J. Super. 252, 266 (App. Div.), cert. denied, 165 N.J. 527 (2000) ("a contracting party is bound by the apparent intention he or she outwardly manifests to the other party"(citations omitted)); Booth v. 3669 Delaware, Inc., 662 N.Y.S.2d 642, 643 (N.Y. App. Div. 4th Dept. 1997).

Plaintiff also incorporates a policy argument in connection with her claims brought under the NJLAD. She argues that while the right to a trial by jury even under the NJLAD may be waived by plaintiff in favor of arbitration, in order for that waiver to be valid it must be clearly and freely given because the strong public policy in New Jersey favoring jury trials in discrimination cases. Notwithstanding the fact that this Court has already found that Plaintiff had clearly and freely given her assent by signing the Agreement and the Agreement satisfies the requirements set forth by New Jersey law, by agreeing to arbitrate a statutory claim, "[Plaintiff] does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum. It trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of arbitration." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985). Moreover, this Court is guided by the Third Circuit's holding in Seus that district courts may only refuse to compel arbitration on the basis of "a generally applicable principle of contract law under which the agreement could be revoked," Seus v. John Vuveen & Co., 146 F.3d 175, 183 (3d Cir. 1998), not on the basis of a particular state's public policy.

Accordingly, as Defendants have requested the Court to compel arbitration by dismissing

Plaintiff's claims and Plaintiff did not request a stay of the proceedings, the Court will dismiss Plaintiff's claims without prejudice.

Dated: February 14, 2008

                                               /s/  Freda L. Wolfson
                                           The Honorable Freda L. Wolfson,
                                           United States District Judge